# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DANIEL B. DARGAN,

                Plaintiff,

-vs-                                 Case No.  6:05-cv-121-Orl-18JGG

VILMA HERNANDEZ-VEGA,
JOHN DOES 1-5, KEVIN BEARY,
SHERIFF OF ORANGE COUNTY,
                Defendants.

---

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Doc. 34-1. filed December 1. 2005). to which Plaintiff responded in opposition (Doc. 42, filed January 31. 2006). Plaintiff Daniel Dargan ("Plaintiff" or "Dargan") brings this action against: (1) Deputy Manuel Hernandez ("Hernandez"). in his individual capacity; (2) Sheriff Kevin Beary ("Beary"). in his official capacity as Sheriff of Orange County, Florida: and (3) John Does 1-5 ("John Does"). Each claim has been brought under 42 U.S.C. § 1983, based on use of excessive force. After reviewing the motions and memoranda provided by each party, the Court grants summary judgment to Hernandez and Beary. The claim brought against the John Does is dismissed.

# I. BACKGROUND

The facts[1], presented in the light most favorable to Plaintiff, the non-moving party, are as follows:

On the evening of May 2, 2003, Plaintiff went to a sports bar with his ex-girlfriend, Ivrose Depardines ("Ivrose"). Plaintiff had one or two alcoholic drinks (gin and cranberry juice) while at the bar. At approximately 1:00 a.m., Plaintiff left the bar without Ivrose and went to the apartment where Ivrose and her son, Ivan Murray ("Ivan"), lived. Only Ivan was home. Plaintiff entered the household without ringing the doorbell and without the permission of either Ivrose or Ivan. Ivan called his mother to inform her that Plaintiff had entered the apartment. Following his mother's instruction, Ivan told Plaintiff to leave the apartment. Plaintiff refused to leave the apartment, and instead expressed his intent to sleep at the home and leave in the morning. At this point, Plaintiff laid down and fell asleep in Ivrose's bedroom.

The Orange County Sheriff's office responded to a call regarding a trespasser at the Depardines residence. One of the Defendants, Deputy Hernandez, was among those to respond to the call. Deputy Pamela Porter and Deputy Shawn Pilkington also responded. Upon entering the apartment, Ivan informed the officers that he and his mother resided in the apartment, that Plaintiff was sleeping in Ivrose's bedroom, and that Plaintiff had refused to

---

[1]The accounts of the two sides differ at two distinct points. However, the facts are viewed in the light most favorable to Plaintiff, the non-moving party. Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).

leave.  Deputy Hernandez spoke with Ivrose by telephone and confirmed that Ivrose wanted

Plaintiff to leave the apartment.

Upon entering the bedroom, Deputy Porter and Deputy Pilkington ordered Plaintiff at

least two times[2] to leave the premises.  Plaintiff testified that the officers threatened to use a

taser[3] if he did not get out of the bed.  Plaintiff rose out of the bed and proceeded to walk

toward the front door, at which point he heard the officers yelling something.  Deputy

Hernandez then fired his taser into the back of Plaintiff.[4]  The pulses from the taser did not

cause Plaintiff to go to the ground.  In response to the taser use, Plaintiff turned around and

said to the officers "what did you do that for?"  The officers then ordered Plaintiff to lie

down in the hallway.  Plaintiff got down on his hands and knees, and subsequently Deputy

Pilkington secured Plaintiff in handcuffs.

---

[2]This is the first of the distinct points of disputed fact.  Deputy Pilkington and Deputy Porter
state that they ordered Plaintiff to leave several times, and Deputy Hernandez states he gave Plaintiff
about five verbal warnings to leave the apartment.  These initial warnings, according to the
Defendants, were followed by even more warnings after Plaintiff got up from the bed, and before the
taser was used on Plaintiff.

[3]A taser, as defined by the Orange County Sheriff's Office, is a "defensive weapon approved
by the agency that transmits electrical pulses to override the central nervous system and control the
skeletal muscles."  Orange County Sheriff's Office General Order Number 470.0 (Exhibit A, Doc. 34-
4, filed December 1, 2005).

[4]This is the second of the distinct points of disputed fact.  Deputy Hernandez testified to the
following facts: Upon reaching the door of the bedroom, Plaintiff stopped.  Deputy Hernandez then
attempted to escort Plaintiff out of the bedroom, and Plaintiff "responded by tensing his body and
bracing himself with both of his arms against the wall.  The Plaintiff then pushed backwards against
Deputy Hernandez, resisting his efforts to escort him out of the bedroom." (Doc. 34-1).  It was at this
point that Deputy Hernandez states he fired his taser into Plaintiff's back.

Plaintiff was arrested and charged with one count of trespass and one count of resisting a law enforcement officer without violence. Plaintiff pled no contest to the trespass charge and was ordered to serve two days in the Orange County jail with credit for two days time served. The state attorney dropped the resisting arrest charge.

Plaintiff alleges that his sexual activities have been affected as a result of the taser being fired into his back; i.e., he has erectile dysfunction that started approximately one month after the taser incident. Plaintiff claims that he continues to feel a tingling sensation in his back where the taser prongs entered his body and that he has dime-sized scars on his back from the taser prongs. Plaintiff also claims that he has occasional numbness in his right hand. Plaintiff did not tell anyone, either at the jail or at anytime during his arrest, about injuries he had suffered as a result of the arrest. Plaintiff has not seen a physician for treatment. Likewise, Plaintiff has produced no medical records regarding his erectile dysfunction, nor any medical evidence regarding his other injuries.

## II. DISCUSSION

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude

the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

*B. Count I - Excessive Force Claim under Section 1983 against Deputy Hernandez*

Plaintiff filed suit against Hernandez under 42 U.S.C. § 1983, alleging use of excessive force. Although section 1983 is not a source of substantive rights, it provides a conduit by which aggrieved parties may recover against those who have violated their rights under federal law. See 42 U.S.C. § 1983; see also Skinner v. City of Miami, 62 F.3d 344, 347 (11th Cir. 1995). To recover under section 1983, Plaintiff must prove that Hernandez

acted under color of state law to deprive Plaintiff of a right secured either under the

Constitution or under federal law.  Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th

Cir. 1999).  Plaintiff is alleging use of excessive force under the Fourth Amendment in this

case:  "[A]ll claims that law enforcement officers have used excessive force—deadly or

not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should

be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." Graham

v. Connor, 490 U.S. 386, 395 (1989) (emphasis omitted).

Hernandez raises the affirmative defense of qualified immunity.[5]  The purpose of

qualified immunity is to "allow government officials to carry out their discretionary duties

without the fear of personal liability or harassing litigation, protecting from suit all but the

plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284

F.3d 1188, 1194 (11th Cir. 2002) (citation omitted) (internal quotation marks omitted).

Qualified immunity will apply "unless application of the standard would inevitably lead

every reasonable officer in [the position of the defendant officer] to conclude the force was

---

[5]The Eleventh Circuit has made it clear that when conducting a qualified immunity analysis at the summary judgment stage, the facts are taken in the light most favorable to the party asserting the injury:

> When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury.  When a district court considers the record in this light, it eliminates all issues of fact.  By approaching the record in this way, the court has the plaintiff's best case before it.  With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute.  Thus, . . . material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity . . . .

Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005) (citation omitted).

unlawful." Nolin v. Isbell, 207 F.3d 1253. 1255 (11th Cir. 2000) (citation omitted).

Additionally, the "standard of objective reasonableness which is used to assess an officer's

entitlement to qualified immunity 'provides ample protection to all but the plainly

incompetent or those who knowingly violate the law.'" Priester v. City of Riviera Beach.

208 F.3d 919. 925 (11th Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335. 341 (1986)).

To be eligible for qualified immunity. a government official must initially

demonstrate that he was performing a "discretionary function" at the time the alleged

violation of constitutional rights occurred. Crosby v. Monroe County, 394 F.3d 1328, 1332

(11th Cir. 2004). If the government official meets this requirement. then the burden shifts to

the plaintiff to demonstrate that the official is not entitled to qualified immunity. Id. The

plaintiff must show two things in order to meet this burden:  1) that the defendant has in fact

committed a constitutional violation: and 2) that the constitutional right the government

official violated was "clearly established" at the time the violation occurred. Id. (quoting

Saucier v. Katz, 533 U.S. 194. 201 (2001)).

A government official is engaged in a discretionary function if the acts he undertook

"are of a type that fell within the employee's job responsibilities." Id. (quoting Holloman v.

Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)).  Hernandez was clearly performing an act

that fell within his job responsibilities here:  he was making an arrest after responding to a

call regarding a trespasser at the Depardines residence.  Therefore. Hernandez engaged in a

discretionary function.

The question now becomes whether Plaintiff can meet his burden of showing that a constitutional violation occurred, and that the violated constitutional right was clearly established at the time of the incident. A court looks to the "totality of the circumstances" in its evaluation of the reasonableness of an arrest. Draper v. Reynolds, 369 F.3d 1270, 1277 (11th Cir. 2004).

*1. Whether Hernandez Committed a Constitutional Violation*

"In determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Id. at 1277-78 (internal quotation marks omitted) (footnote omitted). It is noted that "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 1278 (internal quotation marks omitted).

*a. The Need for the Application of Force*

In determining the "need for the application of force," a court must consider a number of factors "to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). These factors ("Graham factors") include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 1197-98 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Additionally, the reasonableness of a "particular use of force must be judged from the perspective of a reasonable officer on the

-8-

scene, rather than with the 20/20 vision of hindsight." Mercado v. City of Orlando, 407 F.3d 1152. 1157 (11th Cir. 2005) (quoting Graham, 490 U.S. at 396).

The Graham factors are applied to the present case in the following sections.

### i. The Severity of the Crime at Issue

Plaintiff was charged with trespass. in violation of Florida Statute § 810.08, a misdemeanor in the first degree. Plaintiff has never alleged that Hernandez did not have probable cause to arrest him. While trespass is only a misdemeanor, the Eleventh Circuit has stated that "when an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest." Lee, 284 F.3d at 1196; see also Fla. Stat. § 901.15(1) ("A law enforcement officer may arrest a person without a warrant when . . . the person has committed a felony or misdemeanor . . . in the presence of an officer."). The right to make a full custodial arrest comes with it "the right to use some degree of physical coercion or threat thereof to effect it." Lee. 284 F.3d at 1197 (quoting Graham, 490 U.S. at 396).

### ii. Whether the Suspect Poses an Immediate Threat to Safety

Plaintiff was trespassing in the residence of his ex-girlfriend and her son Ivan, a minor. At the time of the trespass. only Ivan was home. Ivan told Plaintiff to leave the apartment. and Plaintiff refused. When the officers initially told Plaintiff to leave the apartment. Plaintiff did not comply. While Plaintiff posed no apparent immediate threat to

the safety of either the officers or himself, Plaintiff's trespassing presence in the apartment

and initial noncompliance did present the potential of an immediate threat..

> ### iii. *Whether the Suspect is Resisting Arrest or Attempting to Evade Arrest by*
> ### *Flight*

Plaintiff admits that he did not immediately respond to the officers' demands to get

up and leave the apartment. Plaintiff, therefore, delayed in acquiescing to the officers'

directives. That being said, at the moment preceding the firing of the taser, Plaintiff disputes

that he did anything to resist or evade arrest.

> ### iv. *Review of the Graham Factors*

Whether there was a need for using a taser in the circumstances presented by Plaintiff

is a close question. Plaintiff's act of trespass in the presence of a minor after returning from

a bar and subsequent noncompliance with the officers' initial directives to leave the

apartment weighs in favor of the need for application of force. However, the fact that

Plaintiff was only engaged in a misdemeanor and that Plaintiff disputes that he did anything

to resist or evade arrest immediately preceding the firing of the taser weighs against the need

to use force. On balance, the Court determines that this first factor of the three-part test

elucidated by the Eleventh Circuit favors Plaintiff.

> ### b. *The Relationship Between the Need and Amount of Force Used*

The second factor set forth by the Eleventh Circuit to determine whether the force

used was reasonable is "the relationship between the need [for the application of force] and

amount of force used." As pointed out in the preceding analysis, the need to use a taser in

the situation presented by Plaintiff is a close question. The amount of force used, however, was in actuality very little. The taser did not cause Plaintiff to go to the ground. The record does not show Plaintiff to have screamed or cried out in pain from the taser. The officers threatened to use the taser again if Plaintiff didn't lie down. Plaintiff then complied. Plaintiff did not complain of pain at the time of the incident, during the car ride to the police station, at the police station, or in jail. Based on this record, the Court must conclude that the amount of actual force used was marginal.

The Eleventh Circuit has repeatedly stated that "the application of de minimis force, without more, will not support a claim for excessive force." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). The Eleventh Circuit has upheld uses of force that were greater than the use of a taser in this instance. See id. at 1255 (finding force to be de minimis where an officer grabbed the plaintiff "from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him"); see also Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (finding the actual force used and injury inflicted were minor in nature where officers "slammed [plaintiff] against the wall, kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants," causing pain in plaintiff's arthritic knee). Even more telling, the Eleventh Circuit in Draper v. Reynolds court stated that "[a]lthough being struck by a taser gun is an unpleasant experience, the amount of force [the officer] used—a single use of the taser gun causing a one-time shocking—was reasonably proportionate to the need for force and did not

inflict any serious injury." Draper v. Reynolds, 369 F.3d 1270. 1278 (11th Cir. 2004). In addition. Plaintiff had not been restrained at the time the force was applied, distinguishing this case from other Eleventh Circuit cases where excessive force has been found. See Lee, 284 F.3d 1198-99 (finding excessive force where the plaintiff was already handcuffed when an officer slammed her head on a car); Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000) (concluding that the use of an attack dog on the plaintiff was excessive when the plaintiff was already lying on the ground and the police officer's gun was pointed at the plaintiff's head).

Although the need to use the taser presented a close question for the Court, the amount of actual force used was clearly marginal. The Court must therefore conclude that this factor. which examines the relationship between the need for the application of force and the amount of force used. weighs in favor of Hernandez.

### c. The Extent of the Injury Inflicted

Finally, the Court considers the third factor. "the extent of the injury inflicted." Plaintiff testified that in addition to the taser causing him erectile dysfunction. he also experiences back pain where the taser prongs struck him. that he has dime-sized scars on his back where the taser prongs struck him, and that he has varying degrees of numbness in his right hand. Plaintiff did not complain to anyone at the jail that he was injured, nor did he seek medical treatment for his injuries. Without more than Plaintiff's recital of this list of unsubstantiated injuries. this factor weighs in favor of Hernandez.

### d. Review of the Eleventh Circuit Constitutional Violation Factors

After carefully considering each of the three factors required by Draper, the Court

concludes that while the need to use the taser was questionable, the amount of forced used

was marginal, and the injuries claimed by Plaintiff are unsubstantiated. On balance, and in

view of the totality of the circumstances, the Court must conclude that Hernandez did not

commit a constitutional violation.

### 2. Whether the Law was Clearly Established

Even if the Court did find that Hernandez had used excessive force during his arrest

of Plaintiff, the granting of qualified immunity would still be appropriate. This is because

the law was not "clearly established" at the time of the incident in question. "The relevant,

dispositive inquiry in determining whether a right is clearly established is whether it would

be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

Saucier v. Katz, 533 U.S. 194, 202 (2001). Whether a constitutional right was clearly

established "must be undertaken in light of the specific context of the case, not as a broad

general proposition." Id. at 201.

There are several ways for Plaintiff to show that the law was clearly established. The

first is to point to a "materially similar case" that has already determined that the actions

undertaken by the police officer were unlawful. Lee, 284 F.3d at 1198. The second way is

to "show that a broader, clearly established principle" gleaned from either the Constitution,

statute, or caselaw, "should control the novel facts in this situation." Mercado v. City of

Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (citing Hope v. Pelzer, 536 U.S. 730, 741

(2002)).  The final way is to show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of [caselaw]." Lee, 284 F.3d at 1199 (quoting Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000)).  Under this third test, the law is clearly established only if the standards set forth by the Supreme Court and appropriate caselaw[6] "inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful." Id. (quoting Priester, 208 F.3d at 927).

   *a.  Materially Similar Caselaw*

   Caselaw that is "materially similar" must pre-date the conduct alleged in the case and "truly compel the conclusion that the plaintiff had a right under federal law." Mercado, 407 F.3d at 1159 (quoting Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998)).  Plaintiff can point to no caselaw that is so materially similar to the present case as to give proper notice to Hernandez that his conduct was unlawful.  As of the date of the incident in May 2003, there is no case that is on point to the fact situation presented here.[7]

   *b.  General Statements of the Law*

   There is no caselaw directly on point, so Plaintiff must next look to "general statements of the law contained within the Constitution, statute, or caselaw [to provide] fair

-----

[6]Appropriate caselaw in this situation is law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida.  Mercado, 407 F.3d at 1159.

[7]Both parties address the potential similar nature of Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004).  However, Draper was decided over one year after the incident in this case took place.  Additionally, the facts of Draper are not sufficiently similar to this case to make a comparison under the "materially similar case" test.

warning of unlawful conduct." Mercado. 407 F.3d at 1159 (internal quotation marks omitted). This test asks whether the "reasoning, though not the holding," behind prior cases should have placed an officer on notice of appropriate conduct. Id. (quoting Hope v. Pelzer, 536 U.S. 730, 743 (2002)). It is important, however, that there is specificity within the general principle of law in order to put the officers on notice of a clearly established constitutional right. Id. "Indeed, the principle that officers may not use excessive force to apprehend a suspect is too broad a concept to give officers notice of unacceptable conduct." Id. Plaintiff points to no general principle of law that can be gleaned from prior caselaw. or from the Constitution or statutes, that would have given "fair warning" to Hernandez.

### c. Egregiousness of Conduct is Clear

Since there is no prior caselaw or general principle applicable to this case. Plaintiff must instead show that this case "fits within the exception of conduct which so obviously violates [the] constitution that prior caselaw is unnecessary." Id. In essence, Plaintiff must show that the conduct was so egregious that any other officer would have known the conduct to be unlawful. The question is whether this case falls into the category of cases that are "so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point." Id. at 1160 (internal quotation marks omitted).

Four Eleventh Circuit cases are illustrative of when an officer has gone beyond the "hazy border between excessive and acceptable force." In Smith v. Mattox. qualified immunity was denied when an officer broke the arm of a plaintiff who had "docilely

submitted" to the officer's request to get down. <u>Smith v. Mattox</u>, 127 F.3d 1416, 1418-20 (11th Cir. 1997). In <u>Priester v. City of Riviera Beach</u>, qualified immunity was denied when the officer allowed a police dog to attack the plaintiff who was already subdued and lying on the ground. <u>Priester v. City of Riviera Beach</u>, F.3d 919. 926-27 (11th Cir. 2000). In <u>Slicker v. Jackson</u>, police officers were denied qualified immunity when, after arresting the plaintiff and placing him in handcuffs, they slammed his head into the pavement and kicked him in the leg, head. and back. <u>Slicker v. Jackson</u>, 215 F.3d 1225. 1227 (11th Cir. 2000). Similarly. in <u>Lee v. Ferraro</u>, qualified immunity was denied when the defendant officer, after having arrested, handcuffed, and completely secured the plaintiff. slammed the plaintiff's head against the trunk of the plaintiff's car. <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1199 (11th Cir. 2002).

Hernandez's action in the present case is easily distinguishable from all four of the above cases because of two key differences. First. Plaintiff was not arrested and secured when the taser was used on him. Second, as explained earlier. use of a taser in this instance was a marginal use of force resulting in unsubstantiated injuries. Hernandez's use of the taser under these circumstances cannot be considered so completely beyond the realm of acceptable force to be used when conducting an arrest.

The Eleventh Circuit has made clear that "[i]n making an excessive force inquiry. [courts] are not to view the matter as judges from the comfort and safety of . . . chambers, fearful of nothing more threatening than the occasional paper cut as we read a cold record accounting of what turned out to be the facts. We must see the situation through the eyes of

the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." Crosby v. Monroe County, 394 F.3d 1328, 1333-34 (11th Cir. 2004). With this in mind, a reasonable officer could have viewed Hernandez's actions the night of Plaintiff's arrest as reasonably necessary. Accordingly, qualified immunity is granted to Hernandez. As a result, Hernandez's motion for summary judgment is also granted.

C. <i>Count II - Claim under Section 1983 against Sheriff Beary</i>

Plaintiff also filed a claim against Sheriff Beary, in his official capacity, under 42 U.S.C. § 1983, alleging that Beary's "use of force" policies and negligent practices deprived Plaintiff of his rights. A suit against Beary in his official capacity as the Orange County Sheriff is treated as a suit against Orange County itself. Pompey v. Broward County, 95 F.3d 1543, 1545 n.2 (11th Cir. 1996); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). It is well settled that a county may be held liable under section 1983 "if the plaintiff shows that a custom or policy of the municipality was the moving force behind the constitutional deprivation." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (internal quotation marks omitted) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-94 (1978)). The burden is on Plaintiff to "identify a municipal policy or custom that caused [his] injury." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (internal quotation marks omitted).

A municipality is not automatically liable under section 1983 even if there was inadequate training or supervision of its police officers.  Id.  The Supreme Court has stated that municipal liability will be bound only in the following limited circumstances:  when there is inadequate training or supervision of the employees; when the failure to train or supervise is a city policy; and when the city policy causes the city employees to violate a citizen's constitutional rights.  Id. (citing City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).  In the absence of an express written or oral policy, a plaintiff "may prove a city policy by showing that the municipality's failure to train evidenced a deliberate indifference to the rights of its inhabitants."  Id. (internal quotation marks omitted).  To establish this "deliberate indifference," the plaintiff must present some evidence that there was knowledge on the municipality's behalf of a need to train in a particular area and that, despite this knowledge, there was a deliberate choice to not conduct the necessary training.  Id. "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise."  Id. at 1351.  This "high standard of proof is intentionally onerous for plaintiffs" because without it, a city would be subjected to respondeat superior liability, which was not a result intended by the creation of section 1983.  Id. at 1351 n.10.

Plaintiff has failed to present any evidence that Beary implemented an unconstitutional custom or policy that was the "moving force" behind the deprivation of Plaintiff's constitutional rights.  Plaintiff has also failed to bring forth any evidence of Beary's "deliberate indifference" to the need for training (e.g., Plaintiff has failed to show

-18-

that there is any record of incidents of police officers using tasers improperly). Plaintiff, in

his Response to Defendants' Motion for Summary Judgment, refers to the "Use of Force

Policy of the Orange County Sheriff's Office as of May 3, 2003, an agreed exhibit to be

introduced by both parties." However, the Use of Force Policy is not submitted in its

complete form.[8] Mere mention of a policy in a memorandum is insufficient to sustain a

claim beyond the summary judgment stage.

As a result of the lack of evidence of any custom or policy set forth by Beary, or any

showing of deliberate indifference on the part of Beary, summary judgment is granted to

Beary.

### D. Count III - Claim against John Does 1-5

Plaintiff has brought no specific allegations against John Does 1-5, nor any

indications of the identities of John Does 1-5. As a result, the claim against John Does 1-5 is

dismissed.

---

[8]Attached to the Affidavit of Captain David Ogden (Doc. 34-4) is Orange County Sheriff's Office General Order Number 470.0, effective date June 26, 2001. Captain Ogden testified that General Order 470 was in effect at the time of the incident in this case. However, General Order 470 was presented to this Court in an incomplete state. Pages 2-5 and 7-8 are missing from General Order 470. The only mention of tasers in the portion of General Order 470 on record is on page 1 (definition of taser) and page 9 (what to do after a taser is used on a suspect). Nothing in the record indicates when an Orange County officer should use a taser. As a result, there is insufficient information regarding what the Orange County Sheriff's Office policy instructed with respect to the use of tasers in effectuating arrests. Plaintiff has the burden at the summary judgment stage to present evidence of the unconstitutional custom or policy in effect at the time of the incident; the presentation of an incomplete General Order 470 does not carry this burden.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

      (1) Hernandez's Motion for Summary Judgment is **GRANTED**;

      (2) Beary's Motion for Summary Judgment is **GRANTED**; and

      (3) Count III against John Does 1-5 is **DISMISSED.**

The Clerk of the Court is **ORDERED** to enter judgment accordingly and **CLOSE** this case.


**DONE** and **ORDERED** in Orlando, Florida on this ___ day of March, 2006.

                                  **G. KENDALL SHARP**
                                  SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties